**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**NEIL L. WEISMAN**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AGUILA BINION, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1306-CR-292 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1302-FD-118

**February 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Aguila Binion appeals his conviction for strangulation as a class D felony. Binion raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

FACTS AND PROCEDURAL HISTORY

On February 8, 2013, Binion was at home in South Bend with his wife Hayah Binion, his children, Hayah's children, and Hayah's cousin. Binion is an amateur mixed martial arts fighter. One of the children, S., who was eight years old, was upstairs in the home and saw a Jello fruit cup fall out of her sister J.'s pocket. S. picked up the fruit cup and gave it to one of her sisters, A., who opened the package and began to eat the Jello. A. took the fruit cup downstairs with her, and Binion, who was in the living room, stated that A. knew that she was not supposed to eat upstairs. A. said that S. already had the food upstairs.

S. came downstairs, and Binion slapped S. in the face. S. started to cry, went outside, and told Hayah what had happened. Hayah entered the home and told Binion that J. had the Jello upstairs because she had been packing. Binion was standing "far" away from Hayah. Transcript at 41. Binion then said: "Well bitch, you already know that they are not supposed to eat upstairs." Id. at 22. Hayah told Binion to "keep his f----- hands out of her daughter's face." Id. at 54. Binion asked "what did [you] say," and Hayah replied "I meant what I said." Id. Binion then "got in [Hayah's] face, and . . . a whole bunch of words [were] going back towards each other. . . . F'ers and B's and stuff like that." Id. at 23.

2

Binion, who was near the television in the living room, walked over to where Hayah was standing by the living room door, grabbed her by the neck, placed his hands around her throat, and began to choke her. Hayah attempted unsuccessfully to move Binion's hands. She had no air supply, her "legs got numb," and she "start[ed] to fade" or pass out. Id. at 55. Hayah's face turned red and then began to turn purple. S. said "call the police," and Binion let go of Hayah. Id. at 26. Hayah gasped for air several times, could barely speak, and her voice was raspy or hoarse. J. called the police and gave the phone to Hayah, and Hayah went outside and spoke with the police on the phone.

South Bend Police Officer Joshua Morgan arrived at the home and attempted to pat down Binion. Officer Morgan ordered Binion to place his hands on his head and interlock his fingers. As Officer Morgan began to place his hands on Binion's hands, Binion dipped down, spun around, and grabbed Officer Morgan. Officer Morgan attempted to use his foot to sweep Binion off of his feet, but Binion was able to step back and avoid Officer Morgan's sweep. Binion pushed Officer Morgan up against the wall, the two men fell to the floor, and Binion struggled with Officer Morgan for approximately two minutes until another officer arrived at the scene and assisted with securing handcuffs on Binion. A few days later, marks appeared on Hayah's neck.

On February 11, 2013, the State charged Binion with Count I, battery to a child as a class D felony; Count II, strangulation as a class D felony; Count III, battery to a law enforcement officer as a class D felony; Count IV, resisting law enforcement as a class A misdemeanor; and Count V, possession of cocaine as a class D felony. On April 25,

2013, the State orally moved to dismiss Counts III and V, and the court granted the motion and re-numbered the charge for resisting law enforcement as a class A misdemeanor from Count IV to Count III. On April 26, 2013, a jury trial was held at which Binion represented himself. During the trial, Binion asked Hayah if she had hit him previously, and Hayah responded affirmatively. Binion also elicited testimony from Hayah that she was angry at the time of the incident and that she used profanity. Hayah testified on cross-examination that she did not hit Binion on the day of the incident. In his closing argument, Binion argued that he acted only to protect himself. The jury found Binion guilty on Counts II and III and not guilty on Count I. The court sentenced Binion to two years with one year suspended to probation for his conviction under Count II and to a concurrent one year for his conviction under Count III.

## DISCUSSION

The issue is whether the evidence is sufficient to sustain Binion's conviction for strangulation as a class D felony.[1] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id. The uncorroborated testimony of one witness, even if it is the

---

[1] Binion does not challenge his conviction for resisting law enforcement.

4

victim, is sufficient to sustain a conviction. Ferrell v. State, 565 N.E.2d 1070, 1072-1073 (Ind. 1991).

The offense of strangulation is governed by Ind. Code § 35-42-2-9(b), which provides:

> A person who, in a rude, angry, or insolent manner, knowingly or intentionally:
>
> > (1)   applies pressure to the throat or neck of another person; or
> >
> > (2)   obstructs the nose or mouth of the another person;[2]
>
> in a manner that impedes the normal breathing or the blood circulation of the other person commits strangulation, a Class D felony.

The State alleged in its charging information that Binion "knowingly and in a rude, angry, or insolent manner, applied pressure to the throat or neck of Hayah Binion, in a manner that impeded the normal breathing or the blood circulation of Hayah Binion." Appellant's Appendix at 4-5. Thus, in order to obtain a conviction, the State needed to prove that Binion knowingly, in a rude, insolent or angry manner, applied pressure to the throat or neck of Hayah, in a manner that impeded her normal breathing or blood circulation.

Binion contends that the State failed to negate his claim of self-defense beyond a reasonable doubt. He argues that "[i]t can be inferred from the evidence that because [he] had just slapped Hayah's daughter over food, jello, being taken upstairs in the house, that Hayah was angry when she came in the house cussing at him and telling him to keep his

---

2 This is the exact wording of the statute.

f'ing hands out of her daughter's face" and that "[s]ince [he] was aware that she had hit him before, it was reasonable, during the confrontation, for him to use his hands in self-defense, to prevent himself from being hit or from what he could reasonably believe[] to be the imminent threat of being hit." Appellant's Brief at 7. The State maintains that the evidence shows that Binion, without any provocation, put his hands around Hayah's throat and began choking her, that he squeezed her neck and throat until it was difficult for her to breathe and she began to pass out, that she turned red and began to turn purple, that after Binion stopped she had to gasp for air, and that several days later marks appeared on her neck. The State further argues that the evidence is sufficient to rebut Binion's claim of self-defense.

Self-defense is governed by Ind. Code § 35-41-3-2. A valid claim of self-defense is legal justification for an otherwise criminal act. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). In order to prevail on a self-defense claim, a defendant must demonstrate he was in a place he had a right to be, did not provoke, instigate, or participate willingly in the violence, and had a reasonable fear of death or great bodily harm. Id. The amount of force a person may use to protect himself depends on the urgency of the situation. Harmon v. State, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). However, if a person uses "more force than is reasonably necessary under the circumstances," his self-defense claim will fail. Id. at 731; see also Hollowell v. State, 707 N.E.2d 1014, 1021 (Ind. Ct. App. 1999) ("Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator.").

When a defendant claims self-defense, the State has the burden of disproving at least one of the elements beyond a reasonable doubt. Wilson, 770 N.E.2d at 800. If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. at 800-801. A mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. Id. at 801. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Id. We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id.

The evidence favorable to the conviction reveals that Hayah entered the living room after S. told her that Binion had slapped her in the face. S. testified that, when Hayah entered the living room, Binion was standing "far" away from Hayah. Transcript at 41. After Hayah stated that J. had the Jello upstairs, Binion stated "[w]ell bitch, you already know that they are not supposed to eat upstairs," and Hayah told Binion to "keep his f------ hands out of her daughter's face." Id. at 22, 54. Hayah testified that, immediately prior to the time Binion walked over to her, she was standing in the living room by the door and Binion was over towards the television in the living room. When asked whether she walked up to Binion or Binion walked over to her, Hayah testified "[h]e came to me." Id. at 58. Binion then grabbed Hayah by the neck, placed his hands around her throat, and began to choke her, and Hayah attempted to move his hands. She

7

had no air supply, her "legs got numb," she "start[ed] to fade" or pass out, and her face turned red and began to turn purple. Id. at 55. Binion released her after S. mentioned calling the police, and Hayah gasped for air several times and could barely speak.

Based upon the testimony of Hayah and the children present, Binion was the initial and only aggressor. The jury could infer from the testimony that Binion participated willingly in the violence, that he did not have a reasonable fear of death or great bodily harm, or that the amount of force he used was unreasonable under the circumstances. We conclude based upon the record that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Binion did not validly act in self-defense and that he was guilty of strangulation as a class D felony. See Rodriguez v. State, 714 N.E.2d 667, 670-671 (Ind. Ct. App. 1999) (holding that sufficient evidence existed to rebut the defendant's claim of self-defense), trans. denied.

For the foregoing reasons, we affirm Binion's conviction for strangulation as a class D felony.

Affirmed.

ROBB, J., and BARNES, J., concur.